Filed 7/2/24  P.v. Delcastillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050982 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 172599) |
| v. | |
| RANDY DELCASTILLO, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

A jury convicted defendant Randy Delcastillo in 1997 of two counts of first degree murder (Pen. Code, § 187)[1] and two counts of robbery (§§ 211, 212.5, former subd. (b)). For the first degree murder counts, the jury found true special circumstances regarding multiple murders, murder while lying in wait, and murder during commission of a felony (robbery) (§§ 190.2, subd. (a)(3), (a)(15), 211, 212.5).  For all four counts, the jury found not true allegations that defendant was armed with a handgun but found true allegations that defendant committed the offenses to benefit a criminal street gang, while for the two murder counts and one of the robbery counts, the jury found true allegations that defendant carried a handgun on his person or in a vehicle (§§ 186.22, subd. (b), 12021.5, 12022, subd. (a)(1)).  The trial court sentenced defendant to life without the possibility of parole plus five years.

---

[1] All further statutory references are to the Penal Code.

In defendant's direct appeal from the judgment, this court reversed defendant's conviction on one of the robbery counts and the robbery-murder special circumstances for lack of substantial evidence, and struck the gang activity enhancements for the murder counts. This court otherwise affirmed the judgment.

In June 2022, defendant petitioned for relief under section 1172.6. The prosecution opposed the petition. The trial court denied the petition at the prima facie stage, concluding that the true findings on the lying-in-wait special-circumstance allegations for the two murder counts precluded defendant from establishing entitlement to section 1172.6 relief. Defendant appeals from the trial court's denial of his section 1172.6 petition. For reasons explained below, we will affirm the trial court's denial of defendant's petition.

## II. BACKGROUND

### A. *Factual Summary*[2]

Because the trial court dismissed defendant's section 1172.6 petition at the prima facie stage, an extended summary of the evidence from defendant's trial is not necessary to resolve the issue raised in this appeal. A full recitation of the facts can be found in this court's prior opinion, which is contained in the appellate record in the instant matter. (*People v. Fernandez et al.* (Aug. 28, 2001, H017793) [nonpub. opn.].) Both parties' briefs utilize this court's prior opinion to summarize the evidence presented at defendant's trial.

Federico Arevalo and Barry San Jose were shot to death in a cul-de-sac. The killing of Arevalo was planned in part because Arevalo was a gang member who was undercutting the gang's price in selling phencyclidine, or PCP. Gang members arranged

---

[2] This brief factual summary is offered to provide general background as to the evidence presented at defendant's trial, not to resolve any contested factual matters. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [a factual summary in a prior appellate opinion cannot establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage].)

for Arevalo to arrive for a purported lucrative drug deal.  One of the people who showed up to assist in carrying out the killings introduced defendant as his wife's nephew who was being recruited into the gang.  While the group waited for Arevalo to arrive, defendant took part in conversations with his codefendants about how the killings would take place, and two of the codefendants pulled out firearms.  The plan was for defendant and two other occupants of the car in which defendant was riding to carry out the killings.  When Arevalo showed up with San Jose driving him, defendant and several others were waiting.  Arevalo and San Jose were shot upon their arrival.  Arevalo died at the scene, while San Jose died several days later.  The evidence did not point to defendant being the shooter, as indicated by the jury's finding that defendant did not personally use a firearm in the commission of the offenses.

### B. *Procedural History*

Defendant and his codefendants jointly appealed the judgments, raising numerous assertions of error.  This court reversed the defendants' convictions for the robbery of San Jose and the defendants' robbery-murder special circumstances for lack of substantial evidence.

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, enacting "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, § 1, subd. (f).)  Accordingly, Senate Bill 1437 amended section 188 to provide:  "Except as stated in subdivision (e) of Section 189 [regarding felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her

3

participation in a crime." (§ 188, subd. (a)(3).) Senate Bill 1437 also added what is now designated as section 1172.6, which provides an avenue for a person to petition the sentencing court to vacate the conviction and to be resentenced under these legislative measures. Senate Bill No. 775 (2021–2022 Reg. Sess.) later expanded eligibility for section 1172.6 relief to a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," along with making other changes. (Stats. 2021, ch. 551, § 2, subd. (a).)

In June 2022, defendant petitioned the trial court for relief under section 1172.6, alleging in part that he could not presently be convicted of murder because of changes to sections 188 and 189. The prosecution opposed the petition in a written submission, arguing as follows: "Petitioner . . . is ineligible as a matter of law as he was convicted of a lying-in-wait special circumstance for each murder count. Lying-in-wait requires an intent to kill and those who intend to kill are not eligible for relief under Penal Code section 1172.6." (Fn. omitted.) The prosecution's opposition attached and asked the trial court to take judicial notice of the following documents: the abstract of judgment, the verdict forms, the jury instructions, jury notes, this court's opinion in the initial appeal by defendant and his codefendants, and 24 volumes of the trial transcripts. Defendant did not submit a reply to the prosecution's opposition.

In a written order, the trial court denied defendant's petition, determining that defendant did not establish a prima facie case for relief under section 1172.6. The trial court stated: "Petitioner is ineligible as a matter of law as he was convicted of a lying-in-wait special circumstance for each murder count. [Citation.] Lying-in-wait special circumstances requires an intent to kill and those who intend to kill are not eligible for relief under section 1172.6." The trial court stated: "Indeed, the entire case was predicated on a conspiracy to kill victim Arevalo, and since victim San Jose was with Arevalo, he was murdered as well. When the jury convicted of the lying-in-wait specials

4

for each murder count, they necessarily concluded that Petitioner had an intent to kill as was, and still is, required for killers and non-killers alike. [Citations.]" The trial court granted the prosecution's request for judicial notice of the documents the prosecution attached to its opposition. The trial court noted that defendant's jury "received the standard aiding and abetting instructions as well as aiding and abetting natural and probable consequence and conspiracy natural and probable consequence instructions," and that the jury "was given three paths to arrive at first degree murder—felony murder, lying-in-wait murder, and willful, premeditated, and deliberated murder." Similarly, the trial court stated that "[a]s for the special circumstances, and most relevant here, there were three paths—robbery felony murder, lying-in-wait murder, and multiple murder. The lying-in-wait instruction specifically required an intent to kill." The trial court concluded, based on the prosecution's theory at trial, the arguments of counsel, and the verdict forms, that the jury found that defendant acted with intent to kill. The trial court also noted that this court's decision in the initial appeal reversed the robbery-murder special circumstances for lack of substantial evidence, meaning "that the only remaining viable theory of Petitioner's first degree murder convictions were the instructions to the jury on the murders being committed while lying-in-wait or willful, premeditated and deliberated." Thus, the trial court concluded: "Persons who intend to kill are still guilty after the changes to sections 188 and 189 effective January 1, 2019. Petitioner intended to kill by lying in wait special circumstances. [Citation.] This petition must be summarily denied."

This appeal followed.

### III. DISCUSSION

In their opening briefs, the parties' arguments centered on the issue the trial court found dispositive in denying defendant's section 1172.6 petition—the jury's true finding on the lying-in-wait special circumstances demonstrated defendant acted with intent to kill, and a person who acts with intent to kill is not eligible for section 1172.6 relief.

5

Defendant argued that the jury did not necessarily conclude that he acted with the intent to kill, because under the instructions provided at trial concerning the lying-in-wait special circumstances, "the jury was not required to find [defendant] had the intent to kill, only that 'a defendant' had the intent to kill."  The Attorney General contended that the jury's true findings on the lying-in-wait special circumstances, combined with the remainder of the record of conviction, conclusively establish that defendant acted with intent to kill.

After defendant's opening brief, the California Supreme Court issued its decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*).  In *Curiel*, the court "consider[ed] the effect of the jury's true finding on the gang-murder special circumstance, specifically its finding that Curiel intended to kill, on his ability to state a prima facie case for relief under Senate Bill 1437." (*Id.* at pp. 440–441.)  The court concluded: "[T]he jury's intent to kill finding was properly given preclusive effect in the resentencing proceedings below, i.e., Curiel was bound by the jury's finding for purposes of assessing his petition. The jury's finding satisfied the traditional elements of the doctrine of issue preclusion, and Curiel has not established any applicable exception. [Citation.]" (*Id.* at p. 441.)  However, the court held that the trial court erred in denying the defendant's section 1172.6 petition at the prima facie stage based on the jury's intent to kill finding, because "[t]he jury's finding of intent to kill does not, itself, conclusively establish that Curiel is ineligible for relief." (*Curiel*, *supra*, at p. 441.)  Our Supreme Court held that a jury's intent to kill finding "is certainly relevant to the trial court's consideration of a petitioner's prima facie showing." (*Id.* at p. 451)  However, the court held that the jury's intent to kill finding "is only one element" of theories of murder liability at issue in that case; an intent to kill finding "does not by itself establish any valid theory of liability. [Citation.]" (*Id.* at p. 463.)

Accordingly, this court requested supplemental briefing on the following four questions:  (1) At the time of the charged offenses, did California law regarding a

6

lying-in-wait special circumstance require proof of the defendant's intent to kill? (2) Assuming that defendant's jury was required to find that defendant acted with intent to kill in finding the lying-in-wait special circumstances true, should this finding be given preclusive effect in determining whether defendant has made a prima facie case for relief under section 1172.6, and if so, does the finding of intent to kill conclusively establish that defendant is liable for murder under a still-valid theory of murder? (3) In denying defendant's section 1172.6 petition, the trial court stated that defendant's jury was presented with three theories on which to convict defendant of first degree murder: felony murder, lying-in-wait murder, or willful, premeditated, and deliberate murder. Was defendant's jury also presented with a fourth option to convict defendant under the natural and probable consequences doctrine, and if so, how does this affect the issue of whether defendant has established a prima facie case for relief? (4) To the extent defendant argues that the jury instructions in his case did not require him to personally act with the intent to kill, does the record of trial conclusively establish that defendant could not presently be convicted of murder "because of" changes to California murder law?

The parties provided supplemental briefs addressing these questions. Defendant's supplemental brief acknowledged that California law at the time of the charged offenses required proof of intent to kill to find the lying-in-wait special circumstances true, and it stated that "[h]ad the jury been properly instructed, this would have preclusive effect." Defendant asserted that even if the jury did find he acted with intent to kill, under *Curiel*, the intent to kill finding does not conclusively establish he is ineligible for relief under section 1172.6 "because there are other elements to malice when a defendant is an aider and abettor." Defendant then contended that his jury was instructed concerning the natural and probable consequences doctrine, and that because of this, even if the jury found he had the intent to kill, the jury's findings and the remainder of the record of conviction do not conclusively establish he is guilty under a still-valid theory of murder.

7

Finally, defendant argued that he could not presently be convicted of murder "because of" changes to California murder law, arguing that cases that indicate the contrary were distinguishable and wrongly decided. The Attorney General asserted that: (1) California law at the time of the charged offenses required proof of intent to kill to find a lying-in-wait special circumstance true; (2) the jury's true findings on the lying-in-wait special circumstances should be given preclusive effect and conclusively establish defendant's culpability for murder under current law; (3) defendant's jury was instructed on the natural and probable consequences doctrine, but this court's prior opinion holding that the killings were not committed during the commission of the robberies while affirming the murder convictions means the natural and probable consequences doctrine and the felony-murder rule are no longer at issue in defendant's case; and (4) defendant has not shown that any alleged error in the jury's instructions concerning the lying-in-wait special circumstances means he can no longer be convicted of murder "because of" recent changes to murder law.

Under section 1172.6, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts" when all of certain conditions apply. (§ 1172.6, subd. (a).) Under section 1172.6, "the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 [citation]." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) " 'The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' [Citation.] 'Like the analogous prima facie

inquiry in habeas corpus proceedings, " 'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.' " [Citation.] "[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." [Citation.] "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " ' [Citation.] Consequently, '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 460.)

"We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage. [Citation.]" (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

Here, the parties agree that at the time of the charged offenses in 1992, California law required that to find a lying-in-wait special circumstance true, the jury must conclude that the defendant acted with the intent to kill. We agree. (See § 190.2, subd. (a)(15), as amended by Stats. 1989, ch. 1165, § 16 [setting penalty for defendant found guilty of first degree murder where "[t]he defendant intentionally killed the victim while lying in wait"].)[3] At the time of the charged offenses, " ' "the requirements of the lying-in-wait special circumstance were slightly different from, and more stringent than, the requirements for lying-in-wait first degree murder. [Citation.] . . . " . . . [T]he lying-in-wait special circumstance requires intent to kill, while lying-in-wait murder requires only

---

[3] The primary difference between the lying-in-wait special circumstance in effect at the time of defendant's charged offenses and the current version is that in the intervening years, the requirement that the murder be committed " 'while' " the defendant was lying in wait was replaced with a lesser standard that the defendant only must have intentionally killed the victim " '*by means of*' " lying in wait. (*People v. Sandoval* (2015) 62 Cal.4th 394, 415.) This difference is not relevant to our analysis.

a wanton and reckless intent to inflict injury likely to cause death.' [Citations.]" (*People v. Cage* (2015) 62 Cal.4th 256, 278 (*Cage*).) " 'The lying-in-wait special circumstance requires "an intentional murder, committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage . . . ." ' [Citations.]" (*Ibid.*)

The trial court concluded that a person who acted with intent to kill is necessarily ineligible for section 1172.6 relief. Under *Curiel*, proof of intent to kill "is certainly relevant to the trial court's consideration of a petitioner's prima facie showing," but this finding was not dispositive in *Curiel* because under direct aiding and abetting principles and the natural and probable consequences doctrine, both of which were at issue in *Curiel*, proof of intent to kill "is only one element." (*Curiel*, *supra*, 15 Cal.5th at pp. 460, 463.) The instant case is distinguishable from *Curiel* in that the lying-in-wait special circumstances necessarily established not only that defendant acted with intent to kill, but that he was guilty of a theory of murder unaffected by Senate Bill 1437 and other recent changes to California murder law. Specifically, the jury's lying-in-wait special-circumstance findings necessarily establish that defendant committed first degree murder by lying in wait. "The lying-in-wait special circumstance [citation] includes the elements of first degree lying-in-wait murder [citation], but requires the additional element that the killing was intentional, not merely committed with implied malice." (*People v. Flinner* (2020) 10 Cal.5th 686, 748 (*Flinner*).) Thus, the California Supreme Court has repeatedly held that where the evidence supports the lying-in-wait special circumstance, it necessarily supports a finding of lying-in-wait first degree murder. (See, e.g., *People v. Parker* (2022) 13 Cal.5th 1, 58; *Flinner*, *supra*, at p. 748; *People v. Nelson* (2016) 1 Cal.5th 513, 550; *Cage*, *supra*, 62 Cal.4th at p. 278; *People v. Moon* (2005) 37 Cal.4th 1, 22; *People v. Carpenter* (1997) 15 Cal.4th 312, 388 (*Carpenter*), overruled in part on other grounds as stated in *People v. Camacho* (2022) 14 Cal.5th 77, 111–112.) When

compared to lying-in-wait first degree murder, a lying-in-wait special circumstance "contains the more stringent requirements," and thus if "the evidence supports the special circumstance, it necessarily supports the theory of first degree murder." (*Carpenter*, *supra*, at p. 388.) Accordingly, the jury's true findings on defendant's lying-in-wait special circumstances conclusively establish that defendant is guilty of lying-in-wait first degree murder, not just one element of lying-in-wait first degree murder.

Senate Bill 1437 did not affect the viability of the lying in wait theory of murder. (See *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935 (*Berry-Vierwinden*) [rejecting the defendant's argument that he established a prima facie case for relief under section 1172.6 because by the time of the defendant's trial, California law was clear that lying-in-wait murder could not be based on an imputed malice theory]; *People v. Madrigal* (2023) 93 Cal.App.5th 219, 241 [evaluating the defendant's claim of entitlement to relief under Senate Bill 1437 and observing that the trial court's instruction of the jury on murder by lying in wait "provided a valid alternative theory the jury could have used to convict Madrigal"].) Thus, unlike *Curiel*, here the lying-in-wait special circumstances conclusively establish not only that defendant acted with intent to kill, but that he is guilty of murder under a theory that does not involve imputed malice and is not impacted by recent changes to California murder law.

The instruction that defendant's jury needed to find that "a defendant" acted with the intent to kill does not alter the preclusive effect of the jury's lying-in-wait special-circumstance findings as to defendant's ineligibility for section 1172.6 relief. Defendant's jury was instructed that it was required to find the following matters true to find the lying-in-wait special-circumstance allegations true: "One, a defendant intentionally killed the victim; and two, the murder was committed while the defendant was lying in wait." While defendant argues that this instruction permitted the jury to find the special circumstances true without concluding that he personally possessed an intent to kill, California law at the time required defendant to personally possess the intent to

11

kill to find a lying-in-wait special circumstance true. (*Cage*, *supra*, 62 Cal.4th at p. 278.) The law regarding the requirements for finding lying-in-wait murder or a lying-in-wait special circumstance has not been amended as a result of Senate Bill 1437 or other recent amendments to California murder law. Thus, the record of conviction " 'contain[s] facts refuting the allegations made' " in defendant's petition, specifically that he " 'could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019.' " (*Curiel*, *supra*, 15 Cal.5th at pp. 460, 451; § 1172.6, subd. (a)(3).)

The Fourth Appellate District, Division One reached a similar conclusion in *Berry-Vierwinden*. In that case, the defendant was convicted of first degree murder in 2010. (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 925.) The jury was instructed on direct aiding and abetting murder liability, murder with malice aforethought, and first degree murder by lying in wait; the trial court did not instruct the jury on any other theory of first degree murder. (*Id.* at pp. 926–928.) The first degree murder by lying in wait instruction informed the jury that a murder is committed by lying in wait if " '[a] person concealed his purpose from the person killed,' " and if " '[a] person waited and watched for an opportunity to act.' " (*Id.* at p. 928.) The defendant petitioned for section 1172.6 relief, which the trial court denied at the prima facie stage. (*Berry-Vierwinden*, *supra*, at pp. 929–930.) On appeal, the defendant "conceded he was 'not tried under felony murder or the natural and probable consequences doctrine,' " but he argued "that he is eligible for relief because the instructions given at trial permitted the jury to convict him of first degree murder by imputing malice to him 'based solely on [his] participation in a crime.' [Citation.]" (*Id.* at p. 932.)

The Court of Appeal disagreed, relying in part on the court's previous decisions in *People v. Burns* (2023) 95 Cal.App.5th 862 (*Burns*) and *People v. Flores* (2023) 96 Cal.App.5th 1164 (*Flores*). The court in *Berry-Vierwinden* held: "To establish a prima face case for relief, Berry-Vierwinden was required to demonstrate that he could

12

not presently be convicted of murder 'because of' the 'changes' made by Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) 'The "changes" described in section 1172.6, subdivision (a)(3) plainly refer to the substantive amendments to section 188 and 189 that were enacted along with the resentencing provisions in Senate Bill 1437.' [Citations.]" (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 935.) The Court of Appeal stated: "As in *Burns* and *Flores*, the instructional errors Berry-Vierwinden asserts have nothing to do with these 2019 legislative changes. What he is really arguing is that the instructions 'may have misled the jury as to what was *then* required to convict [him].' [Citation.] By the time of his trial in 2010, California law was already clear that a direct aider and abettor could not be convicted of lying-in-wait murder on an imputed malice theory. Specifically, the Supreme Court had ruled that: (1) the perpetrator of a first degree murder by means of lying in wait must act with malice aforethought [citations]; and (2) a direct aider and abettor of murder must at a minimum 'know and share the murderous intent of the actual perpetrator.' [Citations.]" (*Ibid.*) The *Berry-Vierwinden* court continued: "By arguing that the jury instructions allowed the jury to convict him as a direct aider and abettor of murder on an imputed malice theory, Berry-Vierwinden is necessarily asserting that they were erroneous under the law in effect at the time of his 2010 trial and subsequent direct appeal. Under *Burns* and *Flores*, however, a section 1172.6 petitioner cannot establish a prima facie case for relief by asserting that the jury instructions permitted conviction on a theory of imputed malice that was *already* prohibited even *before* the enactment of Senate Bill No. 1437. This amounts to 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction.' [Citation.] 'Section 1172.6 does not create a right to a second appeal, and [Berry-Vierwinden] cannot use it to resurrect a claim that should have been raised in his [direct] appeal.' [Citations.]" (*Id.* at p. 936.) Thus, the Court of Appeal concluded: "In sum, Senate Bill No. 1437 did not *change* the law to prohibit direct aider and abettor liability on an imputed malice theory—this was already settled California law by the time

13

of Berry-Vierwinden's 2010 trial. Under *Burns* and *Flores*, Berry-Vierwinden cannot establish that he 'could not presently be convicted of murder or attempted murder *because of changes* to Section 188 or 189' made by Senate Bill No. 1437. [Citations.] The trial court correctly denied the petition because Berry-Vierwinden 'did not satisfy the section 1172.6, subdivision (a)(3) condition as part of his required prima facie showing.' [Citation.]" (*Id.* at pp. 936–937.)

Applying the analysis in *Berry-Vierwinden*, we conclude that the trial court in the instant matter correctly denied defendant's petition at the prima facie stage. Defendant's allegation of instructional error concerning the lying-in-wait special circumstances does not show that he could not presently be convicted of murder "because of" 2019 changes to section 188 or 189. (§ 1172.6, subd. (a)(3).) As defendant acknowledges, California law at the time of his trial required proof that defendant acted with intent to kill for the lying-in-wait special circumstances to be found true. Nothing about the changes to California murder law effected by Senate Bill 1437 or other recent measures impacts what the law requires to prove a lying-in-wait special circumstance and lying-in-wait murder. If defendant's jury instructions failed to require the jury to find that defendant personally acted with intent to kill to find the lying-in-wait special circumstances true, the instructions were erroneous under then-existing law, which "amounts to 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction.' [Citation.]" (*Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 936.) Defendant raised several claims of instructional error in his initial appeal, but he raised no issue regarding the lying-in-wait special circumstance instruction at that time.

In supplemental briefing, defendant asserts that *Berry-Vierwinden* is both inapplicable to the instant case and was wrongly decided. He argues that *Berry-Vierwinden* is distinguishable from the instant situation, asserting: "[T]he holding in *Berry-Vierwinden* is relevant when all of the murder theories at trial would be valid under current law but the instructions were flawed in a manner that allowed the jury to convict

14

on a theory that today is invalid. Since [defendant] was tried on theories that are today invalid, the case does not apply." He argues that *Berry-Vierwinden* and the cases on which it relied were wrongly decided because *Berry-Vierwinden* conflicts with the California Supreme Court's holding regarding the impact of issue preclusion in section 1172.6 proceedings in *Curiel* and decisions from other Courts of Appeal that have held that defendants were not precluded from section 1172.6 relief where instructional errors permitted the defendants to be convicted of murder under a theory that was invalid under current law.

We do not agree with defendant's argument concerning *Berry-Vierwinden*'s inapplicability. Defendant attempts to distinguish *Berry-Vierwinden* solely on the basis that in *Berry-Vierwinden*, the jury was only instructed on theories that he was a direct aider and abettor and committed lying-in-wait murder, theories not affected by recent changes to the law. Here, defendant notes, the jury was instructed on felony murder and the natural and probable consequences doctrine, theories that are implicated by Senate Bill 1437's changes. We do not see this distinction as calling for a different result than *Berry-Vierwinden*. Here, the jury's lying-in-wait special-circumstance findings necessarily support defendant's guilt of lying-in-wait murder, a theory unaffected by Senate Bill 1437 or other recent changes to California murder law. The fact that the jury was instructed on other possible theories of murder culpability, including felony murder and the natural and probable consequences doctrine, does not alter the fact that the jury necessarily found defendant guilty of first degree murder on a theory that remains viable under current law.

The relevant question under section 188, subdivision (a)(3) is not whether a defendant's jury was instructed on any theories of murder liability affected by Senate Bill 1437; the question is whether the record of conviction "conclusively refute[s] a petitioner's allegation that he or she could not be convicted of murder under current law." (*Curiel*, *supra*, 15 Cal.5th at p. 463.) The court in *Curiel* rejected defendant's position

15

that instructing on a theory of imputed malice, in and of itself, precludes dismissal of a section 1172.6 petition at the prima facie stage, stating that if a jury "made findings on all of the other elements" besides intent to kill required under current murder law, "[c]onsidered together, the jury's findings would completely refute a petitioner's allegation that he or she could not currently be convicted of murder because of changes to sections 188 and 189." (*Curiel*, *supra*, at p. 464.) Defendant's jury was instructed on lying-in-wait murder. The jury's true finding on the lying-in-wait special circumstances made findings on all elements of this still-valid theory of murder culpability. Thus, *Berry-Vierwinden*'s analysis applies in the instant situation, and any asserted error in the instructions does not affect the preclusive nature of the jury's findings.

Defendant's argument that *Berry-Vierwinden* was wrongly decided is also not convincing. As defendant acknowledges, another Court of Appeal has taken a similar approach to *Berry-Vierwinden* in *People v. Antonelli* (2023) 93 Cal.App.5th 712, review granted Oct. 18, 2023, S281599 (*Antonelli*). In *Antonelli*, the defendant was convicted in 1991 of provocative act murder, and in later section 1172.6 proceedings, he contended that this conviction was pursuant to a theory of imputed malice because his accomplices allegedly committed the provocative acts, not him. (*Antonelli*, *supra*, at pp. 714–715.) The trial court denied the petition at the prima facie stage, and the Second Appellate District, Division Six affirmed, holding that a conviction of provocative act murder cannot be premised on malice imputed to the defendant based solely on his participation in a crime. (*Id.* at p. 715) The Court of Appeal rejected the defendant's argument that the provocative act instruction allowed the jury to impute malice to him based on his accomplices' provocative acts, stating: "We need not examine the jury instructions to determine whether appellant's contention has merit. Irrespective of the instructions, appellant was not convicted of murder pursuant to a 'theory under which malice is imputed to a person based solely on that person's participation in a crime . . . .' [Citation.]" (*Id.* at p. 721.) The Court of Appeal further concluded that "Senate

16

Bill 1437 . . . did not change the law to prohibit the conviction of provocative act murder premised on malice 'imputed to a person based solely on that person's participation in a crime . . . .' [Citations.] Before the amendment, the law of provocative act murder required that the defendant personally harbor malice. [Citation.] It still does." (*Ibid.*, fn. omitted.)

Defendant argues that the holding in *Berry-Vierwinden* is inconsistent with other Court of Appeal decisions in *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*) and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*). In *Maldonado*, the defendant's jury was instructed on lying-in-wait murder, which unlike the lying-in-wait special circumstance does not require proof that the defendant intended to kill. (*Maldonado*, *supra*, at pp. 1262–1263 & fn. 3.) In this situation, the reviewing court held, the lying-in-wait murder instruction "did not instruct the jury that the perpetrator needed to intend to cause death," and thus "the jury may have found the perpetrator's *purpose* was only to injure or intimidate the victim in a surprise attack." (*Id.* at p. 1266.) Because the jury "could have reasonably construed the instructions in a manner permitting it to convict appellant under a theory of imputed malice," the Court of Appeal held, dismissal of the petition at the prima facie stage was improper. (*Id.* at p. 1267.)

In *Langi*, the defendant petitioned for relief under the precursor to section 1172.6 following his 2007 conviction of second degree murder, and the trial court denied the petition at the prima facie stage. (*Langi*, *supra*, 73 Cal.App.5th at pp. 975–976.) On appeal, the defendant acknowledged his jury was not instructed on the natural and probable consequences doctrine, but he asserted that the standard instructions provided on second degree murder and aiding and abetting "were ambiguous and permitted the jury to find him guilty on a theory under which malice was imputed to him based solely on his participation in the crime" of beating and robbing the victim. (*Id.* at p. 980, fn. omitted.) The defendant argued as follows: "[T]he instructions permitted the jury to find him guilty of murder if it found that (1) the killing resulted from the actual killer's

17

intentional act; (2) appellant aided and abetted that intentional act; and (3) the killer 'deliberately performed [the act] with knowledge of the danger to, and with conscious disregard for, human life'—whether or not *appellant* knew of or consciously disregarded the danger to human life. The instructions thus permitted the jury to impute malice to appellant based solely on his participation in a crime, without having to find that he personally acted with malice." (*Id.* at p. 981.) The Court of Appeal agreed, stating: "[T]he standard aiding-and-abetting instructions are ill suited to the crime of second degree murder. If, as here, a trial court uses such an instruction without tailoring it to the specifics of that crime, the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Id.* at p. 982, fn. omitted.) The reviewing court noted that "while Senate Bill No. 1437 did not alter the law regarding direct aiding and abetting of second degree murder, it did bring out the inadequacy of standard aiding-and-abetting instructions in this context." (*Id.* at p. 982, fn. 10.) Concluding that the instructions "should have explained that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice," the Court of Appeal held that the record of conviction did not "conclusively negate the possibility that the jury found appellant guilty of second degree murder by imputing to him the implied malice of the actual killer, without finding that he personally acted 'with knowledge of the danger to, and with conscious disregard for, human life.' " (*Id.* at pp. 983, 984.)

We find the rationale of *Berry-Vierwinden* and *Antonelli* applicable to the instant matter. Here, the viability of the lying-in-wait theory of first degree murder was not impacted by recent amendments to California murder law, and the jury's true finding on the lying-in-wait special circumstances necessarily demonstrated defendant's guilt of lying-in-wait murder. Because the jury concluded that defendant intended to kill the victims and was guilty under a still-viable theory of murder, Senate Bill 1437 and other

18

recent amendments to California murder law are not implicated in this matter. In *Maldonado*, the concern was that the lying in wait instruction did not tell the jury that the direct perpetrator must intend to cause death, and thus the jury may have found the perpetrator intended only to injure or intimidate the victim in a surprise attack. Unlike *Maldonado*, here there was no possibility that the jury may have found that defendant's purpose was something less than causing the victims' death. Not only was the jury instructed that it had to find a defendant possessed the intent to kill, but as the trial court noted in its ruling denying defendant's section 1172.6 petition, "[a]t no point during the arguments, did any lawyer argue, or suggest, that a specific intent to kill was not required with respect to the lying-in-wait special circumstance and for each defendant." Instead, as the trial court stated, "the entire case was predicated on a conspiracy to kill victim Arevalo, and since victim San Jose was with Arevalo, he was murdered as well." The court in *Maldonado* specifically distinguished its situation from the facts in the instant case, stating: "Because the jury found the special-circumstance lying-in-wait allegation not true, it did not necessarily find appellant intended to kill the victim." (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1262, fn. 3.) Unlike *Langi*, here the jury's findings necessarily demonstrate that defendant is guilty under a still-valid theory of murder law, and defendant cites no reason why he could not have requested an alteration to the instructions at trial if they were erroneous. Senate Bill 1437 did not "bring out the inadequacy" in the lying-in-wait special circumstance instruction of which defendant now complains (*Langi*, *supra*, 73 Cal.App.5th at p. 982, fn. 10); any such inadequacy was present at the time of defendant's trial and direct appeal.

The underlying principle of *Berry-Vierwinden*—that section 1172.6 proceedings are not a forum to raise allegations of instructional error that could have been raised on direct appeal—is settled. "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language

19

of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding. . . . The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' [Citation.]" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; see also *People v. Palacios* (2024) 101 Cal.App.5th 942, 954 ["resentencing hearings are not the proper forum to litigate issues that could have been raised at trial"]; *Burns*, *supra*, 95 Cal.App.5th at p. 865 ["Section 1172.6 does not create a right to a second appeal," and the defendant could not use a petition under the statute to "resurrect" a claim of instructional error "that should have been raised in his . . . direct appeal"].) The law required the jury to find defendant acted with intent to kill to find the lying-in-wait special circumstances true, and the jury's true findings on these special circumstances necessarily demonstrate defendant's guilt of lying-in-wait first degree murder, a theory of culpability unaffected by Senate Bill 1437 or other recent changes to murder law. We therefore follow *Berry-Vierwinden* in concluding that defendant has not shown that any alleged error in his instructions on the lying-in-wait special circumstances supports the conclusion that he could not presently be convicted of murder "because of" recent changes to section 188 or 189. (§ 1172.6, subd. (a)(3); *Berry-Vierwinden*, *supra*, 97 Cal.App.5th at pp. 936–937.)

## IV. DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

BROMBERG, J.

*People v. Delcastillo*
**H050982**